IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

In re:

ROBERT CHARLES DESTFINO AND ILA JANE DESTFINO,

Defendant, Debtor, and Appellant.

v.

GERALD BOCKTING,

Plaintiff and Appellee.

_______________________________/

Case No. 2:10-cv-00768-JAM

Bankruptcy No. 08-28138-C-7

ORDER AFFIRMING DECISION OF BANKRUPTCY COURT

Robert Charles Destfino ("Mr. Destfino") and Ila Jane Destfino ("Mrs. Destfino"), collectively ("Appellants"), appeal the Bankruptcy Court's October 2, 2009 ruling and February 12, 2010 amended judgment. Appellants contest the Court's finding that they are liable as fiduciaries under 11 U.S.C. § 523(a)(4) and that they are liable for all funds disbursed. Appellants also appeal the Court's decision to allow Gerald Bockting

("Appellee") to pursue this action despite being a party to an illegal transaction; its decision to grant Appellee's counter-motion to amend; and its reliance on Appellee's supplemental brief. Appellee opposes the appeal. For the reasons stated below,[1] the decision of the Bankruptcy Court is AFFIRMED.

I. FACTUAL AND PROCEDURAL BACKGROUND

In 2004 Appellants and Appellee invested in a company called "Corporate Sole."[2] According to Appellants, Corporate Sole was a scam business whose front man, William Kennedy, promised investors that if they bought luxury cars and houses under certain conditions, he could "legally eliminate his customers' mortgage and auto loan debts, and avoid tax consequences." Brief for Appellants at 3 [hereinafter Appellants' Br.].

On September 14, 2004, Mrs. Destfino, the niece of Appellee's deceased wife, and Appellee entered into a "Business Limited Agreement". Pursuant to this Agreement, Mrs. Destfino and Appellee invested Appellee's life savings by buying luxury cars and refinancing his two properties pursuant to the methods outlined in the Corporate Sole business plan. Id. at 6. After signing the agreement, Appellee and Mrs. Destfino opened two

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

[2] The record spells Corporate Sole as both "Corporate Sole" and "Corporate Sol". This Court will follow the Sacramento Police Department's spelling in its Police Report as the correct spelling.

joint checking and savings accounts. Brief for Appellee at 7 [hereinafter Appellee's Br.]. Also on September 14, 2004, Appellee signed a document giving Mrs. Destfino a general power of attorney. Id. On September 23, 2004, Appellee executed a "Letter of Resignation as Settlor-Trustee" naming Mrs. Destfino as the trustee under his will. Id. at 8-9. After these transactions, Mrs. Destfino paid the down payment on several luxury vehicles. Id.

On October 20, 2004, Appellee refinanced one house, the "Converse Court House," and deposited $228,000 into one of the joint accounts. Id. at 9. On that same day, Appellants transferred $128,000 into their personal bank account. Id. On November 8, 2004, Appellee refinanced a second house, the "East Brook House," and Appellants transferred $140,000 of that money into their personal bank account. Id. at 10. On November 29, 2005, Mr. Destfino obtained a $337,500 loan from New Century Mortgage through a secured deed of trust on the East Brook House. Id. at 12.

The Bankruptcy Court found that from 2004-2006, Appellants placed Appellee's money in their personal and business bank accounts and used the money for purposes not authorized by Appellee. Excerpts of Record at 22 [hereinafter E.R.]. Throughout the trial, Appellants produced multiple and

incomplete accounting statements; as of this appeal, there remains unaccounted funds. E.R. at 26.

Appellants filed a Chapter 7 Bankruptcy on June 18, 2008. On June 27, 2008, Appellee filed an adversary proceeding against Appellants asserting numerous claims including fraud, defalcation while acting in a fiduciary capacity, embezzlement or larceny, and willful and malicious injury. On October 2, 2009, at the conclusion of the trial, the Bankruptcy Court made findings, supported by evidence, and stated them on the record. The Bankruptcy Court held that a fiduciary relationship existed between Appellants and Appellee. The judge held Appellants liable for defalcation under 11 U.S.C. § 523(a)(4), but not liable for fraud or embezzlement. E.R. at 67-69. The Court also assessed total damages at $388,000 which is the total amount of money received by the Appellants minus the money Appellee acknowledged receiving. E.R. at 69.

On December 12, 2009, Appellants filed a motion to amend the judgment requesting that their liability be amended to zero. E.R. at 90.

On February 18, 2010, the Bankruptcy Court amended the judgment to hold that Appellants were liable for embezzlement under 11 U.S.C. § 523(a) (4) and it declined to eliminate the judgment. E.R. at 21-22.

## II. LEGAL STANDARD

A district court has jurisdiction to hear appeals from a bankruptcy court pursuant to 28 U.S.C. 158(a). The bankruptcy court's interpretations of the Bankruptcy Code and conclusions of law are reviewed *de novo* by the district court. Blausey v. United States Trustee, 552 F.3d 1124, 1132 (9th Cir. 2009) (citations omitted). The Bankruptcy Court's factual findings are reviewed for clear error. Id. Factual review under this standard requires deference to the Bankruptcy Court. McClure v. Thompson, 323 F.3d 1233, 1240 (9th Cir. 2003). Clear error is not demonstrated by pointing to conflicting evidences in the record. National Wildlife Federation v. National Martine Fisheries Service, 422 F.3d 782, 795 (9th Cir. 2005). Instead, if the trial court's account of the evidence is plausible in light of the record viewed in its entirety, the reviewing court may not reverse it even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.

## III. ISSUES ON APPEAL

Appellants raise the following issues on appeal:

1. Whether the bankruptcy court erred in holding that Robert and Ila Destfino were fiduciaries in the context of 11 U.S.C. Section 523(a)(4)?

2. Whether the bankruptcy court erred in holding the Destfinos liable for all funds disbursed?
3. Whether the bankruptcy court erred as a matter of law, in allowing a party to an illegal transaction to collect damages?
4. Whether the bankruptcy court erred in partially granting Mr. Bockting's Counter Motion to Amend?
5. Whether the bankruptcy erred as a matter of law in allowing Mr. Bockting to file a supplemental trial brief?

## IV. ANALYSIS

### A. The Bankruptcy Court's finding that Appellants owed a fiduciary duty to Appellee.

11 U.S.C. § 523(a)(4) provides that debts that arise from "defalcation while [the debtor was] acting in a fiduciary capacity . . ." are nondischargeable. U.S.C.A. § 523(a)(4). Thus, the Bankruptcy Court's determination that Appellants' were fiduciaries, whether that relationship arose from a trust or a partnership, makes Appellees liable to Appellant for defalcation. Appellants argue that the Bankruptcy Court erred in its conclusion that Appellants owed a fiduciary duty to Appellee regardless of whether the arrangement was a trust or a partnership.

1. Trust Fiduciaries

A fiduciary relationship must be created by an express agreement of the parties and it is limited to express or technical trusts. Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986). The basic elements of an express trust include: 1) sufficient words to create a trust; 2) a definite subject; and 3) a certain and ascertained object or res. In re Thornton, 544 F.2d 1005, 1007 (9th Cir. 1976). The key element, however, is the intent to create a trust relationship rather than a contractual relationship. Id.

The key element – the intent of the parties to create a trust – is disputed. Since the issue of intent to form a trust is a question of fact, it is reviewed under a clearly erroneous standard. In re Pizza of Hawaii, 761 F.2d 1374, 1377 (9th Cir. 1985).

The Bankruptcy Court found that an express trust existed between Appellee and Appellants. First, several documents indicate the intent to create a trust. The Business Limited Agreement lists Mrs. Destfino as the "Trustee". Additionally, Mrs. Destfino prepared and signed a General Power of Attorney document which entrusted her "to act and perform[] in said fiduciary capacity consistent with [Appellee's] best interest . . ." Appellee Br. at 16. The statement of trust intent is further supported by the November 12, 2004 East Brook Grant Deed

which designated Mrs. Destfino as the “overseer”, the equivalent of a trustee. Secondly, the trust’s subject consisted of investing Appellee’s life savings into the Corporate Sole business plan. Not only did Mrs. Destfino act as a trustee, but Mr. Destfino did as well. Mr. Destfino took title to Appellee’s home, refinanced it, and kept the money. Mr. Destfino also selected the eight vehicles Appellants purchased with Appellee’s money. Finally, the trust property consisted of Appellee’s savings and the money received from refinancing his two homes. This Court holds that the Bankruptcy Court’s finding that a trust existed and that there was intent to create a trust relationship is not clearly erroneous. Therefore, the Bankruptcy Court’s finding that Appellants are liable as fiduciaries is AFFIRMED.

2. Partnership Fiduciaries

Appellants also argue that they should not be held liable as fiduciaries under a partnership theory because Appellee did not provide legal authority to establish the elements of a partnership.

While Appellee primarily argued that Appellants were fiduciaries under a trust theory, during cross-examination, Mrs. Destfino claimed she was not acting as a trustee. Instead, she explained that she and Appellee were acting as partners in a business venture. E.R. 139. Based on that disclosure, Appellee

also prosecuted his claim under an alternate theory that Appellants were fiduciaries based on their role as business partners with Appellee.

Whether or not a partnership relationship exists is determined by "the intent of the parties to do things which constitute a partnership." Kaufman-Brown Potato Co. v. Long, 182 F.2d 594, 599 (1950) (internal citations omitted). Here, Mrs. Destfino testified that she and Appellee were partners in a business venture. That testimony, combined with the parties' investments in the Corporate Sole venture, is sufficient to show a partnership existed.

California courts and the Ninth Circuit have held that in California, "all partners [are] trustees over the assets of the partnership . . . [and] are fiduciaries within the meaning of § 523(a)(4)." Ragsdale v. Haller, 780 F.2d 794 (9th Cir. 1986). Thus, under partnership theory Appellants are liable as fiduciaries.

Accordingly, the Bankruptcy Court's decision to hold Appellants liable as fiduciaries, either under a trust theory or a partnership theory, is AFFIRMED.

B. Appellants' Liability For All Funds Disbursed

Appellants argue they should not be liable for money they claim they can account for and should at most be liable for the unaccounted funds. Appellants calculate that the unaccounted

funds are surplus funds they paid to cover Appellant's expenses. Consequently, they request that this Court eliminate the damage award or reduce the damage award to solely the unaccounted funds. Appellee argues that Appellants' multiple inconsistent lists of items they allegedly purchased from the commingled funds was not a proper accounting. Accordingly, Appellee asks that Appellants remain liable for the full damage award.

Appellants provided the Bankruptcy Court with four different accounting statements. The latest statement calculated that the total expenses of the Corporate Sole income were $510,581.30. Appellants claim that $475,327.60 of that money was either repaid directly to Appellee or was used to invest in cars and mortgage payments for Corporate Sole. Appellants argue that they in fact contributed a surplus $35,253.70 to the Corporate Sole expenses. See Appellants Br. at 22; E.R. 230-38.

The Bankruptcy Court, however, found Appellants' accounting unreliable. (The "accounting is just a mixture of 'I think I did this; I think I did that; I'm not sure about this; could be here; could be there.'") E.R. 69. To assess damages in this case, the Bankruptcy Court turned to Appellants' fourth and final accounting statement. The Bankruptcy Court accepted Appellants' determination that the total money received was $475,327.60, but disregarded the rest of the accounting.

From that starting point, the Bankruptcy Court reduced the damages by $103,000, the amount Appellee acknowledged receiving, leaving $372,327.60 in damages. To the damages total, it added $16,000, which is calculated by checks given to Corporate Sole. Based on that math, the Bankruptcy Court calculated that Appellants owe Appellee damages of $388,000. E.R. 69-70.

In addition to the $388,000, the Bankruptcy Court added prejudgment interest from February 1, 2006 – the date of the last payment to Corporate Sole – to September 30, 2009.

Because the Bankruptcy Court found, as a matter of fact, that Appellants' fourth accounting statement was unreliable, and given that the Appellants submitted numerous contradictory accounting statements using unsubstantiated accounting methods, it was not clear error for the Bankruptcy Court to disregard most of Appellants' accounting and to award Appellee $388,000 in damages. Accordingly, the Bankruptcy Court's damage award is AFFIRMED.

C. Unclean Hands

Appellants claim that the Bankruptcy Court erred by allowing Appellee's action to proceed. Appellants argue that Appellee has unclean hands because his case is based on contracts which were formed for an illegal purpose - to defraud the government and creditors. Appellee counters that Appellants waived this affirmative defense and that it is meritless.

When evaluating whether the affirmative defense is waived, the reviewing courts look at whether the defendants gave "fair notice of the defense." Wyshak v. City National Bank, 607 F.2d 824, 827 (9th Cir. 1979). Even though Appellants did not cite any authority or facts, they did mention the unclean hands defense in their answer. E.R. at 197. They also briefly stated the argument in their trial brief. E.R. at 164-65. Therefore, because Appellee had notice of the defense during the Bankruptcy Court proceeding, the argument is not waived.

The next issue is whether Appellee has a proper cause of action even though one of the objectives of the contracts was to defraud the government. Since the basis of the dispute is rooted in contract law, this Court turns to state law because "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed." Welles v. Turner Entertainment Co., 488 F.3d 1178 (9th Cir. 2007); quoting CA. CIV. CODE § 1646.

In California, "the need to void contracts in violation of the law must be tempered by the countervailing public interest in preventing a contracting party from using the doctrine to create an unfair windfall." McIntosh v. Mills, 121 Cal. App. 4th 333, 347 (2004). In determining whether to void agreements, "[c]ourts are to look to the various purposes of the contract." Marathon Entertainment, Inc. v. Blast, 42 Cal. 4th 974, 996 (2008). When

the entire contract is not based on an illegal objective, courts try to avoid voiding the entire contract to "prevent parties from gaining undeserved benefit." Armendariz v. Foundation Health Psychocare Services, Inc., 24 Cal. 4th 83, 124 (2000).

Ultimately, the contracts signed between the parties were intended to entrust Appellants with the management of Appellee's finances. The Business Limited Agreement provided directions to Mrs. Destfino to invest Appellee's money; the General Power of Attorney gave her the power to act in Appellee's best interests; and Appellee executed a Letter of Resignation as Settlor-Trustee in which he indicated that Mrs. Destfino would be the trustee under his will. Even though the agreements might have been motivated by a desire to invest money into the Corporate Sole scam, they also entrusted Mrs. Destfino with fiduciary responsibilities to manage Appellee's money. The goal of investing in Corporate Sole does not excuse Appellants from comingling funds, spending the money for their own personal and business expenses, and failing to properly account for the money. Preventing Appellee from pursuing this action would give Appellants an undeserved benefit from their breach of fiduciary duty. Accordingly, the Court declines to find that the Bankruptcy Court erred by allowing Appellee to pursue his case despite his involvement, through Appellants, in the Corporate Sole scheme.

D. Appellee's Counter Motion to Amend and Appellants' Liability For Embezzlement

After the Bankruptcy Court's initial decision following trial, Appellants filed a Motion to Amend the Judgment. Appellants contend that the Bankruptcy Court erred in partially granting Appellee's subsequent Counter-Motion to Amend the Judgment and finding that the Appellants are liable for embezzlement, in addition to defalcation.

"Rule 59(e) provides a mechanism by which a trial judge may alter, amend, or vacate a judgment. Rule 59(e) provides an efficient mechanism by which a trial court judge can correct an otherwise erroneous judgment without implicating the appellate process." Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240, 1249-50 (9th Cir. 1982) (internal citations omitted). Since *Appellants'* motion to amend the Judgment was properly before the court, the Bankruptcy court was well within its rights to consider the counter-motion.

It was also proper for the Bankruptcy Court to amend the judgment to include embezzlement liability. Even though Appellee did not ask the Bankruptcy Court to reconsider its embezzlement decision, the 59(e) motion enables a "trial judge to reconsider the validity of his judgment, and to vacate or alter it as he [sees] fit." United States v. Walker, 601 F.2d 1051, 1058 (9th

Cir. 1979); see also 11 Wright & Miller, Federal Practice and Procedure § 2817 at 192 n. 34 (1969).

Embezzlement requires three elements: (1) property rightfully in the possession of the non-owners; (2) the non-owner's appropriation of the property to a use other than which it was entrusted; and (3) circumstances indicating fraud. In re Hoffman, 70 B.R. 155, 162 (Bankr. W.D.Ark. 1986). Here, the Bankruptcy Court found all three elements. First, "[t]he money was initially put into the [joint] account appropriately." E.R. at 21. Second, the money, without Appellee's approval, was "put into [Appellants'] personal checking account or business checking account." E.R. at 22. Third, that money "was then used for business, for purchasing things that [Mrs. Destfino] used in her business and for her personal benefit." Id. The Bankruptcy Court concluded that "you can't take money that you get for another person, supposedly to account for and take care of and use it for your own benefit. You can't do that. That is embezzlement and that is what happened here." Id. Because the Bankruptcy Court properly found all elements of embezzlement, it correctly granted Appellee's Counter Motion to Amend.

E. Appellee's Supplemental Brief

Finally, Appellants are challenging the Bankruptcy Court's reliance on a supplemental brief filed by Appellee during trial and without leave of the court. However, since the Bankruptcy

Court granted Appellants' motion to strike this supplemental brief and Appellants have not cited to any portion of the record where the Bankruptcy Court specifically relied on the supplemental brief, this issue is without merit.

V. ORDER

This Court finds the Bankruptcy Court's findings of fact challenged herein are not clearly erroneous and supported by the record. It further finds that the Bankruptcy Court's conclusions of law are based on proper legal analysis.

For the reasons stated above, the judgment of the Bankruptcy Court is AFFIRMED.

IT IS SO ORDERED.

Dated: September 24, 2010

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE